22-1598
3DT Holdings, LLC v. Bard Access Sys., Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-three.**

**PRESENT:**
>    **BARRINGTON D. PARKER,**
>    **MICHAEL H. PARK,**
>    **ALISON J. NATHAN,**
>            *Circuit Judges.*

_____

**3DT Holdings, LLC,**

>            *Plaintiff-Appellant*,

>    v.                                                      **22-1598**

**Bard Access Systems, Inc.,**

>            *Defendant-Appellee.*

_____

**FOR PLAINTIFF-APPELLANT:**                    DANIEL J. GIBSON, Delk
                                                McNally LLP, Muncie, IN
                                                (Deanna L. Koestel, Pashman
                                                Stein Walder Hayden, P.C.,
                                                Hackensack, NJ, *on the brief*)

**FOR DEFENDANT-APPELLEE:** NATALIE H. MANTELL (Edward J. Fanning, Jr., *on the brief*), McCarter & English, LLP, Newark, NJ

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

3DT Holdings, Inc. ("3DT") developed a technology, called "Penske" by the parties, that aimed to "help clinicians reliably navigate catheters" to the heart "and to confirm proper placement of a catheter without using a chest x-ray or" electrocardiogram. Special App'x at SPA3. Bard Access Systems, Inc. ("Bard"), a medical-device manufacturer, purchased Penske from 3DT. The transaction's Development Agreement required Bard to "provide commercially reasonable personnel, financial and other support (as determined by Bard, in good faith, based upon its reasonable business judgment) with regard to development of a Bard Product incorporating" the Penske technology. App'x at A695. But after three years of development, Bard could "determine[] in good faith, based upon its reasonable business judgment, that the Exploitation of a Bard Product incorporating [Penske] is no longer commercially practicable due to . . . the creation, development, and/or commercial availability of superior technology" and cease developing Penske. *Id.* Bard exercised that option and 3DT sued, arguing that Bard had breached both the development-support and termination provisions.

The district court (Liman, *J.*) entered a verdict for Bard following a bench trial. 3DT appeals, arguing that the district court (1) misinterpreted the termination provision of the

2

Development Agreement, (2) clearly erred in finding that Bard determined that Penske was not commercially practicable due to the availability of superior technology, and (3) clearly erred in finding that Bard provided reasonable support to the Penske project. We assume the parties' familiarity with the facts, the procedural posture, and the issues on appeal.

"[A]fter a bench trial, we review the district court's finding of fact for clear error and its conclusions of law *de novo*." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 170 (2d Cir. 2020) (cleaned up). 3DT's arguments lack merit. First, the district court did not misinterpret the Development Agreement by failing to require Bard to show that it determined that Penske was commercially impracticable. On the contrary, the district court explicitly found that 3DT did not meet "its burden to show that Bard failed to make the requisite commercial impracticability determination that could relieve it of the obligation to continue work on the Penske technology." Special App'x at SPA40; *accord* Appellant's Br. at 32 (conceding that "the District Court did not expressly adopt [a contrary] interpretation of the Development Agreement").

Second, the district court did not clearly err in finding that Bard reasonably determined in good faith that the development of a superior alternative technology made Penske commercially impracticable. For example, the evidence at trial showed that Bard failed to generate consistent results in experiments using Penske and that Penske had characteristics that would complicate necessary regulatory approval from the Food and Drug Administration. A different Bard catheter-location project, Modus II, lacked these hurdles. Although 3DT points to evidence of Penske's commercial and scientific advantages over Modus II, "a district court's choice between two permissible views of the evidence cannot be clearly erroneous." *United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003).

3

Third, the district court did not clearly err in finding that Bard provided commercially-reasonable development support (as determined by Bard in good faith and based upon its reasonable business judgment) to Penske. The district court permissibly chose to credit evidence that "[t]he Penske project progressed in large part in the same way that other projects at Bard progressed," and to reject the "contention that the Penske team lacked the expertise, personnel, or resources to render Bard's support commercially reasonable." Special App'x at SPA35, SPA37. Although 3DT emphasizes Bard's decision to slow the progress of the Penske project after development setbacks in 2016, evidence supported the district court's findings that Bard nevertheless "continued to make progress toward the goal of commercialization" and that lulls in development "happened at Bard with some regularity" and were not commercially unreasonable. *Id.* at SPA39.

We have considered all of 3DT's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court